NATIONAL BEEF PACKING
COMPANY, Petitioner,

v.

SECRETARY OF AGRICULTURE and
United States of America,
Respondents.

No. 77–2059.

United States Court of Appeals,
Tenth Circuit.

Argued March 19, 1979.

Decided Sept. 13, 1979.

James E. Kelley, Jr., Kansas City, Mo. (Edward A. Smith of Smith, Gill, Fisher & Butts Inc., Kansas City, Mo., on the brief), for petitioner.

Allan Gerson, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Morton Hollander and Thomas G. Wilson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondents.

Before McWILLIAMS and McKAY, Circuit Judges, and MILLER, Judge.*

McWILLIAMS, Circuit Judge.

The Judicial Officer of the Department of Agriculture, acting for the Secretary of

* Hon. Jack R. Miller, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

Agriculture, found that National Beef Packing Company, Inc., had violated the provisions of sections 202(a), (b) and (e) of the Packers and Stockyards Act of 1921, as amended, by paying "brokerage commissions" to employees of Fleming Foods Company for the purpose of inducing the employees to make continuing purchases of beef trimmings from National Beef on behalf of Fleming Foods. 7 U.S.C. § 192(a), (b) and (e). Pursuant to such finding, the Secretary issued a cease and desist order directing National Beef to refrain from committing further similar violations of the Act. National Beef appeals from the cease and desist order. Jurisdiction is based on 28 U.S.C. §§ 2342 and 2344.

Two grounds are urged as reason for vacating the Secretary's cease and desist order: (1) The order itself is not supported by substantial evidence; (2) the Administrative Law Judge had the matter under submission for some 18 months before rendering his decision, and the cease and desist order should be set aside because of such delay which is in violation of the Administrative Procedure Act, 5 U.S.C. § 551, et seq., and the Regulations of the Packers and Stockyards Administration, 9 C.F.R. § 201.1, et seq. Neither of these grounds is availing, and we therefore affirm.

In 1971 two employees of Fleming Foods approached officials of National Beef with an offer to buy beef trimmings on behalf of Fleming Foods on the condition that they be given "the usual trade circle payment," meaning fifteen cents per hundredweight of sales, the normal meat brokerage fee. Thereafter, from April 6, 1971, until April 6, 1973, National Beef made 264 invoiced sales of beef trimmings to Fleming Foods. The brokerage fees referred to by the two employees of Fleming Foods in their initial conversation with officers of National Beef were paid to an entity known as Midwest Selection Service, and over the course of time amounted to $15,699.37. Midwest Selection Service had been formed without the knowledge of Fleming Foods by the two employees who had arranged for the purchases of beef trimmings by Fleming Foods from National Beef, and the monies remitted by National Beef to Midwest Selection Service inured to the benefit of the two employees of Fleming Foods.

■ National Beef's defense was that its officers did not know that the brokerage fees remitted by it to Midwest Selection Service found their way into the pockets of the two employees of Fleming Foods. The Secretary found, however, that National Beef either knew, or should have known, that the brokerage fees thus paid were a form of "commercial bribery" designed to reward the two employees of Fleming Foods for their continued buying of beef trimmings from National Beef. Specifically, the Secretary found that a vice-president of National Beef "knew from the beginning that the brokerage commissions were a thinly papered-over cover for commercial bribery to induce and continue the sales of meat trimmings to Fleming Foods." The Secretary further found that officials of National Beef had "good reason to question the purpose and justification of the brokerage payments they were making" and that they had a "positive duty" to inquire, which they did not, if they had doubt as to the propriety of such payments. In our view, the record clearly supports such findings. The fact that National Beef's officials denied knowledge of any wrongdoing does not end the matter. The state of the record is such as to permit the inference that they did know that they were bribing Fleming Foods' employees in order that National Beef could continue to sell to Fleming Foods. It was, according to National Beef officials, a most profitable arrangement for National Beef, even though they were paying a brokerage commission on all sales made to Fleming Foods.

■ On judicial review of the Secretary's order, we must affirm if the order and the findings in support thereof are supported by substantial evidence. *Hyatt v. United States*, 276 F.2d 308, 312 (10th Cir. 1960). We are not permitted to substitute our judgment for that of the Secretary concerning which of various, albeit opposed, inferences should be drawn from the evidence

unless such inferences are unwarranted in law or without justification in fact. *Butz v. Glover Livestock Comm'n*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); *Aikins v. United States*, 282 F.2d 53, 57 (10th Cir. 1960). We have examined the record as made before the Administrative Law Judge, and conclude that the Secretary's findings are supported by substantial evidence. In such circumstance, we should, and do, affirm the Secretary's order.

█ The further argument that the Secretary's order should be vacated because the Administrative Law Judge had the case "under advisement" some 18 months before rendering his decision is unavailing. 5 U.S.C. § 555(b) provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 9 C.F.R. § 202.16(c) requires that a judge's decision be rendered within a reasonable time. In the instant case, National Beef concedes that it cannot show "direct prejudice" due to the Administrative Law Judge's delay, other than "normal anxiety" as to the outcome of the case. A showing of prejudice has been held necessary before agency action can be set aside for lack of punctuality. *Chromcraft Corp. v. United States Equal Emp. Op. Comm'n*, 465 F.2d 745, 747–48 (5th Cir. 1972); *Kent v. Hardin*, 425 F.2d 1346, 1350 (5th Cir. 1970). It is of course desirable that Administrative Law Judges, indeed all judges for that matter, render decisions promptly and without unreasonable delay. However, there is nothing before us to justify the extreme sanction of dismissing this complaint, now determined to be a valid one, because of the Administrative Law Judge's delay in disposing of the case.

Order affirmed.