Larry W. PETERMAN, Petitioner,

v.

U.S. DEPARTMENT OF
AGRICULTURE,
Respondent.

No. 84–1053.

United States Court of Appeals,
Tenth Circuit.

Aug. 13, 1985.

Jerome H. Mooney of Mooney & Smith, Salt Lake City, Utah, for petitioner.

Aaron B. Kahn, Atty., Washington, D.C. (James Michael Kelly, Associate Gen. Counsel, and Raymond W. Fullerton, Asst. Gen. Counsel, with him on the brief), U.S. Dept. of Agriculture, Washington, D.C., for respondent.

Before BARRETT, LOGAN, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Larry W. Peterman, doing business as Meat Masters, petitions this Court for review of a final order of the Secretary of Agriculture, which order found Peterman guilty of deceptive trade practices, including false and improper advertising, misrepresentations to customers, and "bait and switch" sales tactics, and, in connection therewith, entered a corrective order and imposed a civil penalty in the sum of $20,-

000. We have reviewed the Secretary's order, and the administrative record made in connection therewith, and are of the view that the order should be affirmed.

The issues raised by Peterman in this Court are essentially three: (1) Is Peterman in his meat marketing operation subject to the Packer & Stockyards Act, 1921, as amended, 7 U.S.C. § 181, *et seq.;* (2) is the Secretary's finding that Peterman had engaged in unfair and deceptive practices supported by the record; and (3) is the corrective order entered by the Secretary sufficiently definitive to inform Peterman of prohibited conduct, or is it, on the contrary, too vague.

From the record we learn that Larry W. Peterman, the petitioner, is an individual doing business as Meat Masters in East Layton, Utah, which is a suburb of Salt Lake City, Utah. Peterman personally operated the East Layton store, and he had franchised stores which operated under the name of "Meat Masters" in Colorado, Idaho, Oregon, Wyoming, and in Utah at Orem and Ogden. The marketing *modus operandi* of these franchises was the same as that of Peterman.

Peterman and his various franchisees are engaged in the business of preparing and selling meat food products to consumers in a "meat locker" type operation. For example, Peterman, in the store which he personally runs in East Layton, acquires most of his carcass beef from Utah suppliers, though some of his purchases are from suppliers outside Utah. In connection with his meat operation in East Layton, Peterman carried on an intensive newspaper and television advertising program, some of which reached outside the state of Utah. Customers of Peterman's East Layton store were predominantly from within the state, though some were from out of state. Peterman would cut a beef carcass into portions to meet the customer's desires, and the customers would take their packaged beef, and other meat products in some instances, to their respective homes for personal use, and not resale.

As indicated, Peterman's initial argument is that he is not subject to the Packers & Stockyards Act, because he is not a "packer," nor is he engaged in "commerce," and that he in reality is only a "meat retailer," and therefore possibly subject to the jurisdiction of the Federal Trade Commission, but not the Secretary of Agriculture.

■ Our study of the matter leads us to conclude that Peterman is a "packer" engaged in "commerce" and is otherwise within the ambit of the Packers & Stockyards Act. Such, in our view, is evidenced by Peterman's East Layton operation. Additionally, Peterman is operating through franchisees in several other western states, and while these franchisees, under the franchise agreement, have rights of their own, at the same time Peterman, as the franchisor, controls certain of the franchisees' activities, including the marketing operation.

A case having remarkable resemblance to the instant one is *Bruhn's Freezer Meats v. United States Department of Agriculture,* 438 F.2d 1332 (8th Cir.1971). There the Eighth Circuit held that freezer plant operators who, in commerce, cut up sides and quarters of beef into consumer cuts, boned and ground meats, and then trimmed and wrapped individual cuts and froze prepared meat to preserve it, were "packers" within the Packers & Stockyards Act. The Eighth Circuit in *Bruhn's* followed the judicial construction of the Act as found in *Safeway Stores, Inc. v. Freeman,* 369 F.2d 952 (D.C.Cir.1966). In this regard, Peterman argues that the Eighth Circuit in *Bruhn's* "misused" the D.C. Circuit's opinion in *Safeway,* and that in any event we should not follow the result and rationale of those two cases. This we decline to do. Those two opinions make sense to us, and we are in accord with the result and rationale of each. The further suggestion that the instant case is within the sole jurisdiction of the Federal Trade Commission, exclusive of the Secretary of Agriculture, is not persuasive.

The Secretary found Peterman guilty of deceptive trade practices, including "bait and switch." The record, in our view, supports the finding. Numerous persons testified that in response to advertising they went to Peterman's stores intending to buy beef at about $1 per pound, but were discouraged by Peterman and his employees and agents from buying the advertised cuts and encouraged to buy better cuts at about $3 per pound. That Peterman also produced some satisfied customers is not, in itself, a defense. In sum, the record abundantly supports the Secretary's finding of deceptive trade practices by Peterman. *See National Beef Packing Co. v. Secretary of Agriculture,* 605 F.2d 1167, 1168–69 (10th Cir.1979).

Peterman also complains about the corrective order entered by the Secretary, claiming that it is vague and doesn't apprise him of what he can do, or cannot do. We disagree. The order, to us, is sufficiently definitive. As was said in *Luria Brothers and Company v. F.T.C.,* 389 F.2d 847, 862 (3d Cir.), *cert. denied,* 393 U.S. 829, 89 S.Ct. 94, 21 L.Ed.2d 100 (1968):

> Petitioners' contention that the language "exclusive or substantially exclusive" is too vague cannot be accepted. The order, when interpreted in light of the record, is clear and not subject to attack on that ground. It is necessarily general. Anything more specific would be subject to evasion. *E.B. Muller & Co. v. Federal Trade Commission,* 142 F.2d 511, 520 (6 Cir.1944). Furthermore, the Commission's order is not required to "chart a course for the petitioner." *Zenith Radio Corp. v. Federal Trade Commission,* 143 F.2d 29, 31 (7 Cir. 1944).

As mentioned, Peterman was assessed a civil penalty in the sum of $20,000. Before the Secretary, Peterman's position was that such a sanction was too severe in view of the fact that he had already been subjected to a criminal sanction for the same general type of violation here involved in the United States District Court for the District of Wyoming and sentenced to two years imprisonment, three years probation, and fined $2,700. The Secretary considered that fact, but opined that a $20,000 civil penalty in the instant case was not too severe, considering the widespread and serious nature of his violations. On appeal, Peterman does not, so far as we can find, contest the civil penalty imposed. In any event, we agree with the Secretary's evaluation of this particular matter.

Order affirmed.