**FARM–WEY PRODUCE, INC.,**

and

**Sunnyboy Produce Co., Inc.; Idaho Potato Packers Corporation of Idaho; Buurma Farms, Inc.; Sun Valley Potatoes, Inc.; et al., Plaintiffs.**

v.

**WAYNE L. BOWMAN CO., INC.; Van T. Thornton; and C & W Produce, Inc., Defendants.**

Nos. 1:96–cv–397, 1:96–cv–513.

United States District Court, E.D. Tennessee.

June 26, 1997.

T. Harold Pinkley, Jr., Chambliss, Bahner & Stophel, Chattanooga, TN, Mark A. Amendola, Martyn and Associates, Cleveland, OH, for Plaintiffs.

David J. Fulton, Kennedy, Fulton, Kootnz & Farinash, Chattanooga, TN, for Defendants.

## MEMORANDUM

EDGAR, District Judge.

The plaintiffs produced various perishable agricultural commodities which they sold to defendant Wayne L. Bowman Co., Inc., a Tennessee corporation ("Bowman"). Bowman failed to pay the plaintiffs, and they have brought this suit against Bowman and its president and sole shareholder, Van T. Thornton, to recover trust proceeds tinder the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq.*, and for breach of contract. All issues in this case have been resolved either by agreement or by ruling of the Court, except one: What is the personal liability of Mr. Thornton to the plaintiffs under PACA?

### I. Facts

Bowman, now defunct, purchased fruit and vegetables from producers, and sold them to retailers at a small markup. Bowman's customers were mainly small businesses who would come to Bowman's warehouse to pick up their orders. Some products purchased through Bowman were shipped directly to the retailers. Bowman was itself a fairly small enterprise. Its sole employees were Mr. Thornton, longtime bookkeeper Cindy Kelly, and Mr. Thornton's daughter, who worked only on a part-time basis.

In 1994 when Mr. Thornton began to purchase Bowman's stock, Bowman's gross sales amounted to 14 million dollars. However, after the loss of a large account, gross sales

dropped to under 6 million dollars in 1995. In 1996 Bowman's largest remaining customer was C & W Produce, Inc. ("C & W"). Bowman did business with C & W because C & W presented Thornton with strong financial statements that later proved to be inaccurate. In May 1996, C & W first defaulted on its payments to Bowman. By July, C & W was out of business. Mr. Thornton did his best to keep Bowman going, but to no avail. C & W is now in bankruptcy.

Mr. Thornton was able to collect everything due Bowman from all of its customers save C & W and one other, T & T Produce. These collected funds are now part of the trust created by PACA and will be shared by those plaintiffs who have perfected their claims under 7 U.S.C. § 499e(c). In order to keep the doors open Thornton, during Bowman's last three months of operation, paid himself a salary of $800 per week and Kelly her salary of $600 per week, along with approximately $14,000 for expenses such as gasoline, utilities, insurance, accounting, and pest control.

## II.  Analysis

Some of the plaintiffs argue that Van Thornton is personally liable for any amounts owed them by the Wayne L. Bowman Co. beyond that which they can recover from the PACA trust assets. Essentially, plaintiffs read the statute to create a fiduciary liability for any dissipation of the trust assets. According to the plaintiffs, if an individual, who is "responsibly connected" to a corporation that is in debt to creditors for perishable agricultural commodities, pays any business expense other than payment of trust creditors, then that fiduciary immediately becomes personally liable to all of the unpaid trust creditors for the full amount of the corporate debtor's trust liability. For the reasons that follow, the Court finds this interpretation of PACA to be unwarranted.

Defendant Wayne L. Bowman Company is a broker as defined in § 499a(b)(7). ("The term 'broker' means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the purchaser,

respectively....") Defendant Van Thornton is the President and sole shareholder of Wayne L. Bowman Company. The creditors who are plaintiffs in this action qualify as PACA trust creditors, and have preserved their participation in the trust through the notification procedures set out in § 499e(c)(3) and/or (4). Owing to the difficulties experienced by the Wayne L. Bowman Company in collecting receivables from T & T Produce and C & W Produce, many of Bowman's PACA creditors have not been paid.

Although Bowman has not declared bankruptcy, all of its assets have been liquidated and placed into a bank account pursuant to the temporary restraining order granted by this Court at the outset of this litigation. Those assets are held in trust pursuant to PACA. It is unquestioned that the sole source of income for the Wayne L. Bowman Company was the sale of perishable agricultural commodities, and that all of its assets constituted proceeds of such sales. Most of Bowman's creditors preserved their PACA trust rights.

PACA creates a trust in both the actual produce received by a broker and the proceeds from the sale of any such produce. The relevant statutory sections read as follows:

> (1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

> (2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all

inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be considered to have been made if the supplier, seller, or agent receives a payment instrument which is dishonored. The provision of this subsection shall not apply to transactions between a cooperative association, as defined in section 1141j(a) of Title 12, and its members.

7 U.S.C. § 499e(c)(1) & (2). PACA forbids produce brokers from failing to "account and make full payment promptly" for produce bought on credit and from failing to maintain the trust. 7 U.S.C. § 499b(4). Furthermore, § 499e(a) provides a private right of action to injured sellers of produce for violation of § 499b(4): "If any commission merchant, dealer, or broker violates any provision of section 499b of this title he shall be liable to the person or persons injured thereby for the full amount of damages ... sustained in consequence of such violation."

Even though Bowman has been thoroughly liquidated, the amount of funds remaining does not come close to satisfying the PACA claims of its creditors. The pro rata recovery obtained by the creditors is on the order of one-quarter the size of the debts. One group of plaintiffs seeks to obtain the remaining three-quarters of the amounts they are owed by Bowman from Thornton individually. They argue that the statute clearly states that they are entitled to recover from Bowman. They advance the position that Thornton, as President and sole shareholder of Bowman, and as the individual in charge of Bowman's day-to-day operations, is in the position of a fiduciary of the PACA trust, and that he is therefore personally responsible under common-law trust doctrine for any dissipation of trust assets. They argue that trust assets were indeed dissipated by the payment of salaries and the approximately $14,000 in operational expenses incurred during the period of time when Bowman's customers became late in their payments to Bowman.

■ The plaintiffs' position that Thornton is liable for the amount of PACA trust debts beyond that which may be recovered from the corporation because he is "responsibly connected" to the corporation as defined in the statute is without statutory support.

The term "responsibly connected" means affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association....

7 U.S.C. § 499a(b)(9). According to the statute, the significance of being "responsibly connected" to a company that has violated PACA has nothing to do with personal liability for corporate debts. Rather, a person responsibly connected to a PACA violator may not be employed by a PACA licensee except by approval of the Secretary of Agriculture. 7 U.S.C. § 499h(b). There is no other mention in the statute about being "responsibly connected." Recovery may therefore not be had of Thornton merely because he is "responsibly connected" to Bowman. Although this status may subject him to some action by the Secretary of Agriculture if he attempts to obtain future employment in the perishable agricultural commodities industry, it does not lead to his personal liability for Bowman's debts. See Heartland Produce Co. v. Kazmer, Inc., 1996 WL 680014 (N.D.Ill.1996), at *3.

■ As the plaintiffs point out, most courts which have addressed the question of individual liability under PACA have allowed some form of recovery for PACA creditors against individuals who were officers, shareholders, or other persons perceived by the courts to be in a "fiduciary" position with respect to the PACA trust. See Andrew M. Campbell, Annotation, *Statutory Trust Under Perishable Agricultural Commodities Act* (7 U.S.C.A. §§ 499a *et seq.*), 128 A.L.R. FED. 303, 336–39 (1995). The leading case on this question is *Morris Okun, Inc. v.*

*Harry Zimmerman, Inc.,* 814 F.Supp. 346, 349 (S.D.N.Y.1993). In that case, the Southern District of New York stated:

The law in this area is sparse.... PACA establishes a statutory trust for the benefit of sellers and suppliers. This trust arises from the moment perishable goods are delivered by the seller. An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from the piercing the veil doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends.

*Id.* at 348. The court cited with approval *In re Paul Shipton,* BAP No. CC–90–1366–OVP (unpublished Ninth Circuit Bankruptcy appeal), in which the Bankruptcy Appeal Panel of the Ninth Circuit

rejected Shipton's argument that to be held personally liable he must be a dealer or PACA trustee in his own right. Furthermore, the court noted that the statute and the regulations, as well as the case law under the Packers and Stockyards Act, the statute upon which the PACA is based, provide that any failure to account for or preserve trust assets, for whatever reason and however innocent, creates a liability for those trust assets. The regulations also clearly establish this proposition, providing that "[a]ny act or omission which is inconsistent with this responsibility [preserving trust assets, is unlawful.]" 7 C.F.R. § 46.46(e)(1).

*Morris Okun,* 814 F.Supp. at 349 (citations omitted). The *Okun* court interpreted the statute and regulations to imply that "a PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities." *Id.* at 348.

The remaining cases which have considered PACA liability for sole shareholders or decision makers are in accord with *Morris Okun. See Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280 (9th Cir.1997); *Bronia, Inc. v. Ho,* 873 F.Supp. 854 (S.D.N.Y.1995); *Shepard v. K.B. Fruit & Vegetable,* 868 F.Supp. 703 (E.D.Pa.1994); *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209 (E.D.N.Y.1993); *A & J Produce Corp. v. CIT Group/Factoring, Inc.,* 829 F.Supp. 651 (S.D.N.Y.1993); *In re Paul Shipton,* BAP No. CC–90–1366–OVP (unpublished Ninth Circuit Bankruptcy appeal). The *Sunkist* case is apparently the only Circuit Court of Appeals case to have directly addressed the issue of individual liability under PACA.[1]

The Ninth Circuit asserted in *Sunkist* that "[o]rdinary principles of trust law apply to trusts created under PACA, so that for instance the trust assets are excluded from the estate should the dealer go bankrupt." *Sunkist,* 104 F.3d at 282. By extension, the Ninth Circuit went on to reason that a person who controls the assets of a corporation is in the position of a fiduciary as to the trust assets, and thus may be secondarily liable for amounts unrecoverable from the corporation.

The plaintiffs would adhere to a rule of strict liability: If a seller of perishable commodities preserves its PACA rights and is not paid by the buyer corporation, and if any money subject to the PACA trust is disbursed by the corporation for any purpose other than the payment of its debt, then a violation of the PACA trust has occurred. Furthermore, any person in any responsible connection with the company—such as a shareholder, director, or officer—is automatically secondarily liable for the total amount of the debt. Without doubt, PACA is a

---

1. Plaintiffs cited two cases at trial for the proposition that individuals may be liable under PACA. Neither case stands for the proposition. In *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154 (11th Cir.1990), the Eleventh Circuit expressly did not address the issue. The other case, *Peterman v. Department of Agriculture,* 770 F.2d 888 (10th Cir.1985), deals with the Packers and Stockyards Act and does not concern PACA.

harsh statute, and intentionally so. However, there is no indication in the statute itself, the associated regulations, or the legislative history that Congress intended to abrogate substantial portions of state corporation and contract law by making a large class of individuals sureties on the contracts of produce buyers.

In § 499e(c)(1), Congress stated that "financing arrangements under which ... brokers ... encumber or give lenders a security interest in [perishable or proceeds] are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest." The legislative history is instructive on the type of "financing arrangements" contemplated by Congress.

> Many commission merchants, dealers, or brokers, in the normal course of their business transactions, operate on bank loans secured by the inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. Under present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract.

H.R. Rep. No. 98–543 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 407. Congress plainly intended that PACA place sellers of perishable commodities ahead of the banks in priority to collect in the case of insolvency. Nowhere in the legislative history is the issue of individual liability of persons under PACA discussed. *Id.; see also* H.R.Rep. No. 104–207 (1995), *reprinted in* 1995 U.S.C.C.A.N. 453.

Certainly the intent of PACA is that produce suppliers be paid first, and in full, before other secured creditors. The regulations are equally clear that any act in derogation of this duty should be construed as a violation of PACA. 7 C.F.R. § 46.46(b)(2). However, if Congress intended to ease a burden on commerce created by the phenomenon whereby creditor banks supplying operating capital for pro-

duce brokers have bankruptcy priority over produce sellers, it is unlikely that it intended to replace that burden with the burden which would result from the rule sought by plaintiffs. As a practical matter, the corporate form would be meaningless for produce brokers. Shareholders, officers, directors, and even mere employees would risk personal liability for huge debts. Any financial reversal of a company could mean instant personal ruin for practically anyone associated with that corporation. Under those circumstances, few would wish to be associated with a broker that did business on anything other than a cash basis.

As evidenced by the House Report quoted above, Congress recognized that as a matter of course, the produce business does not operate on cash basis. Quite the contrary, Congress recognized that

> [s]ellers of perishable agricultural commodities are often located thousands of miles from their customers. Sales transactions must be made quickly or they are not made at all. Many sales are consummated while the commodities are en route to a particular destination. Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards.
>
> Normal terms within the industry require payment within ten days after delivery of the produce although there are many instances where credit is advanced which allows additional time to pay for the shipment.

H.R. Rep. 98–543 (1983), 1984 U.S.Code Cong. & Admin. News 405, 406. The House Report went on to state that it did not contemplate that PACA would "change the methods of doing business by either the seller or the buyer." *Id.* Clearly, if Congress had intended huge individual liability to result from PACA, it would have realized that business practices would indeed have to change.

Under the plaintiffs' rule, any dissipation of trust assets constitutes a breach of the statutory trust, and any breach automatically makes the fiduciary personally liable, albeit secondarily, for the entire amount of all corporate debts to produce sellers. This

cannot have been the intent of Congress. A produce broker must necessarily derive its revenues from the sale of produce. Much of that produce will be PACA produce, assuming that the sellers have preserved their trust rights. In a situation like the instant case, all of the Bowman company's revenues were proceeds from the sale of PACA produce, except in those instances when a seller neglected to preserve its trust rights. In such a case, any payment of ordinary business expenses must necessarily be made from trust assets. The result is that any time a corporation pays any salary, rent, or anything other than its suppliers, it has breached the trust. If for some reason the corporation is subsequently unable to pay its suppliers, then the corporation's officers, directors, and shareholders are individually liable for the entire amount of the corporate debt.

It is unlikely that any produce broker exists that pays no business expenses other than its suppliers, and thus every broker is breaching its trust duty by dissipating trust assets every time it pays salary, rent, or utility bills. Another way to violate § 499b is failure to pay the suppliers' bills. Thus, a broker—and its shareholders, officers, and directors—is liable if it doesn't pay its bills, or even if it does pay the suppliers' bills if it has also "dissipated" trust assets by paying normal business expenses. Such a scheme essentially amounts to strict liability: If a corporation can't pay its suppliers, its personnel are liable. Had Congress wanted to make such a rule, it could have said so. It did not. In fact, § 499b(4) appears to contradict such a position directly: "[T]his paragraph shall not be considered to make the good faith offer, solicitation, payment, or receipt of collateral fees and expenses, in and of itself, unlawful under this chapter." The minimal salaries and other operational expenses are "collateral expenses," and payment thereof should not be construed as a breach of fiduciary duty under the PACA trust.

The portion of PACA that addresses individual persons is that part of the Act dealing with licensure. If an individual is licensed and commits PACA violations, he may have his license revoked or suspended. If an individual is responsibly connected to a company that violates PACA, he may be barred from employment with a PACA licensee. Nothing in the statutory language suggests that individuals who are associated with companies in the perishables trade should be in constant fear of losing their life savings for operating a business responsibly. Plaintiffs are still entitled to the judgment they have obtained against the Wayne L. Bowman Co., but not against Thornton individually.

█ Even if Thornton were individually liable for a breach of fiduciary duty, the rule urged upon this Court by plaintiffs is unduly harsh. Plaintiffs say that Thornton is liable for the entire amount of a supplier's unpaid bills. A more sensible approach would be to hold defendant liable, if he is to be held liable at all, for the amount "dissipated." Even reading the statute and regulations, specifically 7 C.F.R. § 46.46, in the strictest manner possible, the largest amount for which Thornton could be held liable would be the amount of trust monies disbursed for some purpose other than the payment of trust creditors. Thornton testified at trial and presented documents to the effect that the only non-produce outlays during the period where Bowman's customers went out of term amounted to approximately $14,000 plus salary of Thornton and his bookkeeper Cindy Kelly. The salary totalled $1400 per week, over a period of approximately three months. Thus, the total amount of operating expenses and salaries would be approximately $30,800. If liability attaches, $30,800 is the amount in which the trust was "dissipated." If they were to recover at all, plaintiffs should recover their *pro rata* share in this amount.

█ Plaintiffs also argue that the sale of produce on credit to a company which was subsequently unable to pay for the produce is in itself also a breach of fiduciary duty on the part of Thornton. Under this logic, the trust was dissipated in the entire amount of the produce, because the produce itself is a trust asset, and the dissipation occurs at the moment the broker cedes possession of the produce to its customer. This has a perverse result. A company that experiences the slightest financial difficulty is driven out of

business in an instant. An individual connected with the company is encouraged to cease operations immediately, rather than continuing to make an effort to struggle back to its feet. Any expenses paid during a period of default suddenly become amounts for which individuals connected to the company may be secondarily liable. Rather than risk enormous personal liability, the individuals would have to cease company operations immediately.

The House Report indicates that the administration understood the difficulties faced by companies in the distribution chain. The Domestic Marketing, Consumer Relations, and Nutrition Subcommittee heard the following testimony:

> Mr. Vern Highley, Administrator of the Agricultural Marketing Service, USDA, summarized the excellent record PACA had made in bringing stability to the marketplace by suppressing unfair and fraudulent practices. He commented that unnecessary interruptions in the flow of payments due to slow pay or business failures had a domino effect along the entire supply chain.

H.R. Rep. 98–543 (1983), 1984 U.S.Code Cong. & Admin. News 405, 412. In the instant case, no fraud or unfair practice was perpetrated by Bowman or Thornton. Rather, they were the second "domino" in the chain when their own customers, particularly C & W, defaulted.

The Sixth Circuit has recognized that it is impossible to dissipate trust assets which were never there to begin with. In *Sanzone–Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir.1993). The Sixth Circuit observed:

> Certainly, there could be situations where it can be shown that the produce in question did not produce assets in inventory sufficient to meet the supplier's claim. For example, the produce could have rotted in inventory or could have sold for a loss, or the proceeds could have been segregated and gambled away.

*Id.* (dicta). In other words, in a case such as the instant one, in which some of the produce in question was in effect sold for a total loss, there were never any proceeds from that produce for Bowman (or Thornton) to squander.

Furthermore, the undisputed testimony at trial was that Thornton based his decision to have Bowman sell produce to C & W on long experience with C & W's owners and on fraudulent financial statements. Even under traditional trust law, not every bad business decision amounts to a breach of fiduciary duty. A fiduciary's common law duty to beneficiaries is to exercise the skill and care of a person of ordinary prudence would exercise in dealing with his own property. RESTATEMENT (SECOND) OF TRUSTS § 174.

It is the conclusion of the Court that Congress did not intend the result that an individual such as Thornton should be held secondarily liable for the PACA trust debts of his corporation simply because he is the sole shareholder of the PACA debtor. Furthermore, even if such an individual would be held liable if guilty of a breach of fiduciary duty under the common law, there was no such breach in this case. A judgment shall be entered that the plaintiffs shall take nothing in their claim against Thornton individually.

An appropriate order will enter.

### ORDER

In accordance with the accompanying memorandum, it is hereby **ORDERED AND ADJUDGED** that judgment shall be entered in favor of the defendant Van L. Thornton in plaintiffs' claim against him for individual liability under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.*

**SO ORDERED.**