**RED'S MARKET, Plaintiff,**

v.

**CAPE CANAVERAL CRUISE LINE, INC., Steve Kosmas, Paul Kosmas, Nicholas Kosmas, and Bruce Burner, Defendants.**

No. 6:00–CV–1408ORL28JGG.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 9, 2002.

Frank Moor Bedell, Winderweedle, Haines, Ward & Woodman, P.A., Orlando, FL, Louis W. Diess, McCarron & Associates, Washington, DC, for Plaintiff.

August James Stanton, Jr., Stanton & Gasdick, P.A., Orlando, FL, for Defendants.

**ORDER**

ANTOON, District Judge.

Plaintiff, Red's Market ("Red's"), has sued Defendants, Cape Canaveral Cruise Line, Inc. ("Cape"), Steve Kosmas, Paul Kosmas, Nicholas Kosmas, and Bruce Burner ("individual defendants") to recover payment for produce sold by Red's to Cape. The action was brought under the Perishable Agricultural Commodities Act ("PACA" or "the Act"), 7 U.S.C. § 499a *et seq.*, and this court has jurisdiction pursuant to 7 U.S.C. § 499e(c)(5) and 28 U.S.C. § 1331. Judgment was entered in favor of Red's and against Cape after Red's accepted Cape's offer of judgment, leaving unresolved only the question of whether the individual defendants are liable to Red's under PACA. This court now answers that question in the affirmative.

*Factual and Procedural Background*

Red's is a Florida corporation "engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities" and "licensed under the provisions of PACA as a dealer." Defendant Cape is a Florida corporation engaged or formerly engaged in the management of a cruise ship and restaurants of the ship. There is no dispute that Cape was a regular purchaser of produce from Red's and that Cape used the produce in the preparation of meals for its passengers. Furthermore, it is agreed that the individual defendants were the officers and directors of Cape during the period of time in question.

In its Complaint, Red's alleged eleven counts based on Cape's failure to pay for produce it sold to Cape between June 16, 2000, and September 7, 2000. The claims included allegations that PACA applied and that, under 7 U.S.C. § 499e, a statutory trust was created in favor of Red's. In their Answer, Defendants admitted that Cape purchased the goods as alleged in the Complaint and that Cape had not tendered payment for said goods. However,

Defendants denied the applicability of PACA to this action. Both parties filed motions for summary judgment on this issue, but before the issue was resolved Red's filed its "Notice of Acceptance of Offer of Judgment" (Doc. No. 25), noting that it had accepted an offer of judgment from Cape for $24,553.70. Accordingly, judgment was entered in favor of Red's and against Cape for that amount. (Doc. No. 29). Red's asserts Cape "has ceased operations and has no assets from which to pay [Red's]." Because the debt remains unpaid, Red's continues to pursue this action against the individual defendants.

In their Motion for Summary Judgment (Doc. No. 24), Defendants argued that PACA did not apply to this dispute because Cape is excluded from the PACA definition of "dealer." This argument was rejected and the court denied Defendants' Motion for Summary Judgment (Doc. No. 42). Red's had argued in its Cross Motion for Summary Judgment (Doc. No. 32) that PACA applied to both Cape and the individual defendants. The court granted this motion in part, concluding that Cape was a dealer and that PACA applied (Doc. No. 42). However, because there was no evidence in the record from which the court could determine whether the individual defendants were in positions of control over PACA trust assets, the motion was denied as to the issue of liability of the individual defendants (Doc. No. 42).

A nonjury trial was then held on the only remaining issue—whether the individual defendants were responsible for the debt under § 5(c) of PACA [7 U.S.C. § 499e(c)]. At trial, the parties stipulated that the individual defendants were in positions of control over the PACA trust assets and were responsible for all aspects of Cape's business, which included directing payments to be made to Cape's creditors.

However, in their written final argument the individual defendants assert that PACA does not apply on other grounds. First, the individual defendants argue that the PACA trust ceased to exist when the produce was converted to meals, contending that the "PACA trust applies only to perishable goods, receivables and sale proceeds thereof, and not to those products which have been manufactured into a food product of a different kind or character." Second, relying on the reasoning contained in *Farm–Wey Produce, Inc. v. Wayne L. Bowman Co.,* 973 F.Supp. 778 (E.D.Tenn. 1997), they argue that a plaintiff in a PACA case should be limited to seeking relief from the corporate defendant in the absence of a finding of fraud or other improper conduct on the part of individuals in positions of control over PACA assets. As set forth below, both of these arguments fail.

### Analysis

*Are proceeds from the sale of meals subject to the PACA trust?*

This court rejects the individual defendants' theory of defense that the trust provisions of PACA ceased to apply when the produce was converted into meals. Essentially, this theory is based on the premise that the trust asset—the produce—was no longer in existence and therefore the defendants' trust responsibilities terminated. This theory simply does not square with the statute, federal regulations, or relevant case law.

Congress enacted PACA in 1930 to regulate trading in perishable agricultural products with "the intent of 'preventing unfair business practices and promoting financial responsibility in the fresh fruit and produce industry.'" *Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 282 (9th Cir.1997) (quoting *Farley & Calfee, Inc. v. United States Dep't of Agric.,* 941 F.2d

964, 966 (9th Cir.1991)). To this end, PACA requires that dealers make prompt and full payment for their produce purchases. 7 U.S.C. § 499b(4). In 1984, troubled by the practices of some dealers, Congress amended the Act, adding section 499e(c)(2), which provides additional protection for the sellers of fruits and vegetables. Under this provision, the agricultural commodities, products derived from the produce, and proceeds from the sale of such items are subject to a statutory trust for the benefit of the seller until full payment is made to the seller by the dealer. 7 U.S.C. § 499e(c)(2); *see also Sunkist,* 104 F.3d at 282.

PACA narrowly defines "perishable agricultural commodities" as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4). However, § 499e(c) explains that other products derived from perishable agricultural commodities, as well as the proceeds from the sale of such assets, are part of the trust provided for by the Act. This portion of the statute provides:

> (2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food *or other products derived from perishable agricultural commodities,* and any *receivables or proceeds from the sale of* such commodities *or products,* shall be held by such commission merchant, dealer, or broker *in trust* for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, *until full payment of the sums owing in connection with such transactions has been received* by such unpaid suppliers, sellers, or agents....

7 U.S.C. § 499e(c)(2) (emphasis added). Thus, the plain language of the statute provides that the *res* of a PACA trust includes not only the produce itself but also those products derived from the produce and the proceeds from the sale of the products. In the instant case, the meals must be construed as "products derived from perishable agricultural commodities." 7 U.S.C. § 499e(c)(2).

It is equally clear that by enacting section 499e(c)(2), Congress intended that PACA trusts remain in effect until full payment is made by the purchaser of agricultural commodities. This intended result is echoed in 7 C.F.R. § 46.46(d)(1), which requires that dealers "maintain trust assets in a manner that such assets are *freely available* to satisfy outstanding obligations to sellers of perishable agricultural commodities." (emphasis added). Neither of these provisions contains an exemption eliminating a dealer's responsibility once the dealer converts the commodities to meals which it later sells.

Case law discussing the application of the PACA trust to processed food makes clear that—as plainly set forth in the statute—the trust applies to both the perishable agricultural commodities themselves and to products derived from those commodities. For example, in *JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc.,* 70 F.Supp.2d 1119 (E.D.Cal.1999), the court determined that the PACA trust did apply to food purchased by restaurants and made into meals which were sold to the restaurants' customers. The court stated: "[T]he trust provisions at issue here apply not only to produce, but also to products derived therefrom, and to the revenue derived from sales of produce and produce-derived products, which plainly encompasses menu items, such as those sold in Paragon's restaurants, and revenues derived therefrom." 70 F.Supp.2d at 1121; *accord Sysco Food Servs. of Seattle, Inc. v. Country Harvest Buffet Rests., Inc. (In re Country Harvest Buffet Rests., Inc.),* 245 B.R. 650, 652 (B.A.P. 9th Cir.

2000) ("In 1984 Congress created as a remedy under PACA a statutory trust in which essentially all produce, produce-derived revenues or products would constitute the trust *res* until all produce suppliers are paid in full.") (citing 7 U.S.C. § 499e(c)(2) and *JC Produce* ). A contrary decision would be at odds with the plain language of the statute and would create an unintended exemption from liability under PACA.

Although the individual defendants do offer case law in support of their theory that the PACA trust did not extend to the food incorporated into meals by Cape, the cases are distinguishable. Those cases—*A & J Produce Corp. v. CIT Group/Factoring Inc.*, 829 F.Supp. 651 (S.D.N.Y.1993), and *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063 (2d Cir.1995) [1]—involved the efforts of sellers of processed food to impose PACA trust liability on the purchasers of the processed food products. Both courts in those related cases took the view that it was not the intent of the Act that distributors of processed food be entitled to the protection of PACA. Unlike the sellers in the cases cited, in the instant case Red's was the seller of raw produce rather than of processed food, and the PACA trust plainly applies to the products purchased by defendants both before and after they converted the perishable commodities into meals. Hence, the individual defendants' first argument is without merit.

*Are the individual defendants subject to PACA liability?*

■ As noted above, by enacting 7 U.S.C. § 499e(c) Congress armed sellers of produce by designating them beneficiaries of statutory trusts. The *res* of these trusts includes produce, products derived from produce, and proceeds from the sale of such goods. As trustees, once dealers accept delivery of produce the dealers owe the sellers a fiduciary duty to protect the *res*. Because the failure of corporate dealers to pay for produce is most often due to the corporation's inability to pay, the question has arisen whether employees and officers of corporate dealers who are in a position to control trust assets may also be considered trustees under PACA. Courts have generally answered this question in the affirmative. *See, e.g., Sunkist*, 104 F.3d at 282–83 (collecting cases). The extension of liability to those in control of the trust assets is reasonable and necessary in order to enforce the goals of Congress in establishing the statutory trust. If liability were limited to corporate dealers, the intent of the federal statute to protect consumers and sellers of produce would be easily frustrated. *See Collins Bros. Corp. v. Nix (In re Nix )*, Nos. 91–4040–COL, 91–4062–COL, 1992 WL 119143, at *5 (M.D.Ga. Apr. 10, 1992) ("No piercing of the 'corporate veil' is necessary to hold an officer liable, and that's particularly the case where a federal statute would be circumvented unless the individual is made accountable.") (footnotes omitted); *cf. Bruhn's Freezer Meats of Chicago, Inc. v. U.S. Dep't of Agric.*, 438 F.2d 1332, 1343 (8th Cir.1971) (noting, in discussing the Packers and Stockyards Act of 1921 [7 U.S.C. § 181 *et seq.*], that "an order limited in its application only to the corporate petitioners would prove futile" and that "[t]he law is well settled that the 'corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute' ") (quoting *Schenley Distillers Corp. v.*

---

1. Defendants also cite *In re Lombardo Fruit & Produce Co.*, 12 F.3d 110 (8th Cir.1993); however, that case involves notice requirements under PACA and is not germane to the issues in the instant case.

*United States,* 326 U.S. 432, 437, 66 S.Ct. 247, 90 L.Ed. 181 (1946)).

The individual defendants agree that they are officers, shareholders, and directors of Cape, that they were in positions of control over the PACA trust assets at issue here, and that they were responsible for all aspects of Cape's business, including directing payment of Cape's creditors. Nonetheless, the individual defendants claim that they are not responsible for the debt owed Red's because there is no evidence that they committed fraud or engaged in unfair practices. Relying on *Farm–Wey Produce, Inc. v. Wayne L. Bowman Co.,* 973 F.Supp. 778 (E.D.Tenn.1997), they maintain that under such a standard they cannot be found liable because there is no evidence they were "not caring and responsible in their duties and responsibilities to the business" and to the PACA trust assets.

■ The defendants are correct in asserting that there is no evidence that as corporate officers they did not effectively execute their responsibilities to Cape. However, that is not the test to determine whether they breached their responsibilities as PACA trustees. Several cases have discussed the duties owed by PACA trustees in general terms. For instance, in *Sunkist* the Ninth Circuit noted that those "who are in a position to control PACA trust assets, and who breach their duty to preserve those assets, may be held personally liable under the Act." 104 F.3d at 283. Recognizing that "PACA is a 'tough law,'" the Fifth Circuit has agreed with the reasoning in *Sunkist* that it is appropriate to impose personal liability on shareholders, officers, and directors of corporate buyers who are in a position to control PACA trust assets and fail to maintain the assets. *Golman–Hayden Co. v. Fresh Source Produce Inc.,* 217 F.3d 348, 350 (5th Cir.2000)

(quoting *Hawkins v. Agric. Mktg. Serv.,* 10 F.3d 1125, 1130 (5th Cir.1993)). Additionally, in *Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346 (S.D.N.Y. 1993), the district court found that a shareholder who was in a position to protect trust assets but failed to do so would be personally liable for the unpaid debt for produce. The court stated that "a PACA trust imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes the use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities." 814 F.Supp. at 348. In sum, case law generally holds that an individual in control of PACA trust assets may be liable for failure to preserve the *res* of the trust without regard to whether the failure was intentional or whether the individual was an otherwise responsible corporate officer.

■ In the instant case, the individual defendants failed to account for the trust assets. Because these defendants admittedly had total control over Cape, the trust assets, and the payment of corporate debts, they are liable to Red's for failure to preserve the trust assets. As discussed above, use of trust assets for any purpose other than to pay Red's was a violation of the individual defendants' fiduciary duty to Red's. Findings of misappropriation or bad faith are not essential to an imposition of individual liability upon these individual defendants who were in total control of the PACA trust assets. A simple finding that they failed to account for the trust assets is sufficient. Moreover, the facts do not support the individual defendants' assertion that they are blameless. Indeed, it is unlawful for a dealer to "fail to maintain the trust as required under section 499e(c)." 7 U.S.C. § 499b(4).

In reaching this conclusion, the court has considered the *Farm–Wey* case cited by the defendants. Essentially, that decision holds that a PACA dealer may dissipate trust assets to maintain its operation, including by paying wages and salaries to the dealer's employees. Underlying the decision was the court's express concern that a contrary ruling would likely result in imposition of individual liability for "practically anyone associated with [a dealer corporation]." 973 F.Supp. at 782. This concern seems to be overstated. All relevant decisions reviewed by this court imposing individual liability have done so only as to those individuals who are in positions to control PACA trust assets. For the reasons set forth above, this court is not persuaded by the reasoning in *Farm–Wey*.

### Conclusion

The court having determined that the PACA trust was not terminated when Cape converted the produce into meals and having also determined the individual defendants to be liable for the amount held in trust for the benefit of Red's Market, it is **ORDERED** as follows:

1. The Clerk of Court is hereby directed to enter judgment against the individual defendants (Steve Kosmas, Paul Kosmas, Nicholas Kosmas, and Bruce Burner) and in favor of Red's Market in the amount of $25,243.95,[2] which sum shall bear postjudgment interest at the current rate provided by law. The judgment shall indicate that liability is joint and several as to all defendants, including Cape Canaveral Cruise Line, Inc.

2. In accordance with Local Rule 4.18, Plaintiff may submit a claim for costs or attorney's fees by separate motion or petition within fourteen (14) days of the entry of judgment.

---

**2.** The total sum of $25,243.95 represents the principal debt of $24,553.70 plus prejudgment interest of $690.25 calculated from October 7, 2000—thirty days after the last produce was sold to Cape on thirty-day payment terms. In its discretion, the court has determined to grant Plaintiff's request for prejudgment interest and has determined the prevailing post-judgment interest rate of 2.24% per annum is an appropriate prejudgment interest rate in this case. *See, e.g., Smith v. Am. Int'l Life Assurance Co. of New York*, 50 F.3d 956 (11th Cir.1995) (holding that award and rate of prejudgment interest are within trial court's discretion); *see also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir.1998) (noting that "[i]n the absence of a controlling statute, federal courts' choice of a rate at which to determine the amount of prejudgment interest to be awarded is also a matter for their discretion" and "[t]hat choice is usually guided by principles of reasonableness and fairness," by state law, and by rate used by federal courts in awarding post-judgment interest), *cert. denied sub nom. Nitram, Inc. v. M.A.N. Gutehoffnungshutte GmbH*, 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999).