MORRIS OKUN, INC. and Finest
Fruits, Inc., Plaintiffs,

v.

HARRY ZIMMERMAN, INC. and Harry
Zimmerman, individually,
Defendants.

No. 91 Civ. 6888 (LBS).

United States District Court,
S.D. New York.

Feb. 22, 1993.

Mark C.H. Mandell, New York City, for plaintiffs.

McCarron & Assoc., Silver Spring, MD, Stephen P. McCarron, of counsel, for defendants.

## OPINION

SAND, District Judge.

This case arises under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c). Plaintiffs, Morris Okun, Inc. ("Okun") and Finest Fruits, Inc. ("Finest"), move for summary judgment against defendants Harry Zimmerman, Inc. ("HZI") and Harry Zimmerman, individually, for monies allegedly to be held in statutory trust on behalf of plaintiffs under PACA for the sale of perishable goods. Plaintiffs also allege breach of contract. These motions raise a novel question regarding individual liability under PACA, a statute which has been litigated only rarely in this Circuit.

### Factual Background

Both Okun and Finest are New York corporations engaged in the business of buying and selling wholesale quantities of fresh fruit and vegetables in interstate commerce. Each has its principal place of business in the N.Y.C. Terminal Market, Bronx, New York, and both are duly licensed pursuant to PACA.

Defendant HZI is a New York Corporation, licensed under PACA as a dealer and/or commission merchant of perishable agricultural commodities, with its principal place of business in the N.Y.C. Terminal Market, Bronx, New York. Defendant Harry Zimmerman was the sole officer and 100% stockholder of defendant HZI.

Plaintiff Okun alleges that between June 26, 1991 and August 1, 1991, Okun sold and delivered to defendants, pursuant to oral contracts, perishable agricultural commodities for which defendant HZI was to pay Okun $16,854.00. There is no dispute that Okun delivered these goods and that the defendants accepted them. Furthermore, there is no dispute that defendants did not pay for these goods. Okun filed timely written notice of its intent to preserve trust benefits as required under PACA by sending notice to defendant Zimmerman and the Secretary of Agriculture. Following the receipt of this notice, defendant HZI paid Okun $8,552.00, leaving an unpaid balance of $8,302.00.

Although Okun alleges in the complaint that the purchases were made by "defendants", and alleges that defendant HZI was to pay for the goods, the affidavits in support of the motion submitted by Annabelle Burgess, Okun's credit/accounts receivable manager, and Murray Padover, the Okun salesman who handled the Zimmerman account, allege that the transactions were between Okun and Harry Zimmerman, individually. Defendant Zimmerman seeks to defeat the motion for summary judgment by arguing that a genuine issue of material fact exists as to the identity of the purchaser, stating that he always did business in corporate form as HZI, and not as an individual. Given the Court's interpretation of the law, to be addressed below, this distinction is of little significance, and will not serve as a basis for defeating the summary judgment motion.

Finest alleges that between June 24, 1991 and July 26, 1991, defendant HZI purchased $15,022.50 in fruits and vegetables from Finest. When defendant HZI did not remit payment, Finest filed timely written notice of its intention to preserve trust benefits. Subsequent to that notice, HZI paid $8,167.00, leaving an unpaid balance of $6,855.50. HZI raises a defense which relates to the terms of payment printed on Finest's invoices, which will be discussed below with reference to the notice provisions of PACA.

### PACA

The PACA statute regulates trading in agricultural commodities, essentially fruits and vegetables. The Act was amended in 1984 upon a finding by Congress that a burden on commerce in perishable agricultural commodities was caused by certain financial arrangements, whereby dealers would receive goods without having made payment for them. To remedy this burden, Congress provided for a statutory trust on behalf of unpaid suppliers or sellers. The relevant portion of the statute reads as follows:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the

sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.

The statute further provides that to preserve one's rights as a beneficiary of a PACA trust, notice must be given by the seller to the dealer and the Secretary of Agriculture within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary [which time is ten days from the date of receipt and acceptance of the goods], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction.

The regulations promulgated pursuant to this section provide that the maximum time parties may agree upon for payment is thirty days from the date of receipt and acceptance of the goods. 7 C.F.R. § 46.46(f)(1) & (2).

### Discussion

■ Having set out the facts and the applicable law, we now turn to the motions for summary judgment. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the supporting evidence demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. The Court does not resolve disputed issues of fact, but rather, resolving any ambiguities and drawing all reasonable inferences against the moving party, assesses whether genuine issues of material fact remain for the jury. *See, e.g. Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Pivotal to the decision on both plaintiffs' motions is the question of whether, under PACA, an individual can be held liable to unpaid sellers for a corporation's debts. Resolution of this question in the affirmative

also renders immaterial defendant Zimmerman's argument that he never dealt as an individual with Okun, but only in corporate form, as he would be liable either way.

■ The law in this area is sparse. The plaintiffs have cited only one case to the Court, and we are aware of only one other. Both cases, which will be discussed in more detail below, rely on the same legal theory, which is the following. PACA establishes a statutory trust for the benefit of sellers and suppliers. This trust arises from the moment perishable goods are delivered by the seller. An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from the piercing the veil doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends. *Passalacqua Builders v. Resnick Developers*, 933 F.2d 131 (2d Cir.1991). We find persuasive the reasoning holding a fiduciary liable for breach of trust under PACA.

■ We recognize at the outset that a PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities. Proceeds from the sales of perishables subject to PACA receive special treatment in other respects as well. Thus, a PACA beneficiary has priority over any secured creditor on the purchaser's commodity-related assets to the extent of the amount of his claim. *D'Arrigo Bros. Co. v. Freshville Produce Distributors*, 1990 WL 310632 (S.D.N.Y. 1990). Furthermore, trust assets are not part of the estate in bankruptcy. *In re Fresh Approach, Inc.*, 48 B.R. 926 (N.D.Tx.1985). These consequences are attributable to the statute, and it is the respon-

sibility of Congress to revise the statute if these are not the intended results.

In *In re Paul Shipton*, BAP No. CC–90–1366–OVP,[1] the Bankruptcy Appeal Panel ("BAP") of the Ninth Circuit considered this question, and held the individual, who was the sole shareholder and an officer and director of the produce distributor, personally liable for the corporation's debt. In *Shipton*, as in this case, the corporation, Sunfresh, was licensed pursuant to PACA, and the individual, Shipton, was not. There was no dispute as to the amount owed by the corporation.

The BAP endorsed the reasoning of *In re Baird*, 114 B.R. 198 (9th Cir. BAP 1990), a case arising in the contracting field, for the proposition that "without regard to whether the corporate veil may be pierced, an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss". Addendum, p. 7. This principle is equally valid under New York law. *See, West Indian Cotton Ass'n v. Threadtex*, 761 F.Supp. 1041, 1054 (S.D.N.Y.1991).

The court rejected Shipton's argument that to be held personally liable he must be a dealer or PACA trustee in his own right. Furthermore, the court noted that the statute and the regulations, as well as the case law under the Packers and Stockyards Act, the statute upon which the PACA is based, provide that any failure to account for or preserve trust assets, for whatever reason and however innocent, creates a liability for those trust assets. *In re Milton Poulos, Inc.*, 94 B.R. 648 (C.D.Cal.1988), *aff'd.* in part and *rev'd.* in part, 947 F.2d 1351 (9th Cir. 1991); *In re Fillippo v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1008 (E.D.Pa.1978). The regulations also clearly establish this proposition, providing that "[a]ny act or omission which is inconsistent with this responsibility [preserving trust assets], including dissipation of trust assets, is unlawful." 7 C.F.R. § 46.46(e)(1).

The second case by which we are guided is *In re Nix*, 1992 WL 119143 (M.D.Ga., April 10, 1992). In *Nix*, the individual defendant was 100% shareholder, director, and president of Beallwood, a retail grocery store licensed as a dealer under PACA. Once again, there was no dispute as to the delivery of the goods, the amount owed, or the timeliness of filing of the notice to preserve PACA rights by the seller. The court noted the two complementary corporate law principles that individuals are generally not held responsible for the liabilities of a corporation, and that a corporation can act only through its agents and can thus fulfill fiduciary obligations only through its agents. The court proceeded to find that the individual was

100% shareholder; president; the primary buyer of produce; the one who paid all of the bills; and the person who controlled all of the significant business of Beallwood. There can be no doubt that the appellant was the primary actor responsible for Beallwood's failure to live up to its fiduciary responsibilities under PACA. Therefore, he is personally responsible for the defalcation.

1992 WL 119143, *6.

The facts of these two cases are quite similar to those in the case before this Court. Mr. Zimmerman is the sole shareholder of HZI, and his counsel conceded at oral argument that there is no dispute that he controlled the day-to-day operations of the company. Okun alleges that Zimmerman purchased the goods at issue in his own name and accepted billing in his own name, and therefore Zimmerman is personally liable to Okun for the debt incurred. Zimmerman argues that in fact he never operated in his own right, he was not a licensed dealer, and he paid all bills on corporate checks. Drawing all inferences, as we must, in favor of the non-moving party, and having accepted the reasoning of the two cases discussed above, we hold the corporation liable in the first instance for the debt owed Okun, and Zimmerman liable secondarily, as the corporate

---

1. This opinion is unpublished, and is not available on Westlaw or Lexis. Plaintiffs have attached a copy to their brief in support of their motions for summary judgment. It will be cited as per the page numbers of the plaintiffs' addendum.

fiduciary, for whatever amount of money is not recoverable from the corporation.

Finest's motion does not involve that particular factual twist, because it is undisputed that the corporation, HZI, was the party with whom Finest transacted business. Having determined as a matter of law that an individual in Zimmerman's position can be held personally liable for the debts of the corporation, we find, as per Okun, that defendant HZI is liable in the first instance to Finest, and defendant Zimmerman is liable secondarily for whatever shortfall may exist.

We pause for a moment over an argument raised by defendants concerning the Finest claim, although we find no basis for concluding that there is a genuine issue of material fact in dispute. Defendants contend that the money owed to Finest is outside the protection of the PACA trust, because the terms of payment exceed the "30–day from purchase" maximum allowed by the regulations. Defendants arrive at this conclusion by reasoning that the printed terms on the Finest invoices, which read "Terms: 30 days", and on the next line "All bills must be paid weekly", indicate that payment is due thirty days from date of invoice. Because the invoice is issued on a weekly basis and covers orders from Monday through Thursday, defendants argue that the payment is actually due somewhere between 31 and 34 days from date of purchase, bringing the transactions outside of the PACA provisions.

There are several deficiencies in defendants' position. First of all, the argument is essentially that Finest has waived its rights under the PACA statutory trust. Fed. R.Civ.P. 8(c) requires that the affirmative defense of waiver be pleaded in the answer. Defendants did not plead waiver in their answer, nor did they plead any other affirmative defense. However, since the defense is now raised in this motion for summary judgment, and Finest has had ample opportunity to address the issue in the many briefs it has submitted, we will consider the merits of the defense.

Defendants present no evidence to substantiate their interpretation that the phrase "Terms: 30 days" means that payment is due thirty days from date of invoice, as opposed to thirty days from date of delivery of the goods, or even that that is what defendants believed the phrase to mean. This should not be read as indicating that the Court is engaging in an improper weighing of the evidence. Rather, the Court is merely recognizing that defendants present no affidavits concerning this argument at all; it appears only in a brief paragraph in the defendants' 3(g) statement.

In contrast, Finest presents substantial evidence that it complied with the terms of PACA. Section 499e(c)(3)(ii) provides that if the parties wish to change the terms of payment from the default period of ten days, they must reduce that agreement to writing before the transaction. In this regard, Finest submits the form letter it sends out to all its customers, and which the Comptroller of Finest avers was attached to the February 4, 1988 invoice sent to Mr. Zimmerman. This letter clearly states that "all purchases must be paid not later than thirty (30) days from day of purchase." Exhibit 1 to Affidavit of Sebastian K. Sebastian ("Seb.Aff."). The Comptroller avers, and his affidavit is unchallenged, that Finest's sale terms are thirty days from purchase date, not from the date of invoice, and that this thirty day rule was formulated to comply with PACA. Seb. Aff. ¶¶ 3, 4. Nothing in defendants' bald assertion that the words "Term: 30 days" printed on the invoice actually means that payment is due thirty-four days after purchase raises this to a genuine issue in dispute.[2]

### Conclusion

Because we find that there is no genuine issue of material fact in dispute, both plaintiffs' motions for summary judgment are granted. Harry Zimmerman, Inc. is to pay plaintiff Okun $8,302.00. Any amount which is not recoverable from HZI is to be paid by

---

2. Furthermore, the Court notes, although it is not binding upon us, that the Department of Agriculture has reviewed the notices of intent to preserve trust assets filed by creditors of HZI, and certified that Finest qualifies for trust protection under PACA for the amount claimed in this motion. Exh. 2 to Seb.Aff.

Harry Zimmerman, individually. Harry Zimmerman, Inc. is to pay plaintiff Finest $6,855.50. Any amount which is not recoverable from HZI is to be paid by Harry Zimmerman, individually.

The question whether the Court should allow prejudgment interest and attorney's fees in this PACA litigation is a troublesome one. Plaintiff Okun's invoices clearly provide that "past due accounts will accrue 1.25% interest per month. If legal action is taken to collect past due amount, you agree to pay our reasonable attorney's fees and costs." Because this provision was presumably a bargained term of the contract, the Court will enforce it.

However, there is no such contractual provision in the Finest contract, and the award of prejudgment interest and attorney's fees is therefore within the discretion of the Court. Failure to make such an award may create a disincentive to prompt payment to suppliers and encourage collection litigation while financially strapped purchasers fend off creditors, contrary to the congressional intent evidenced in PACA. An award of prejudgment interest and attorney's fees may however be thought to unfairly deplete the assets available to defendants' many other creditors, already significantly disadvantaged by PACA.

Because of the dearth of prior precedent on the question of personal liability under PACA, we limit Finest's award to prejudgment interest at the statutory rate, and decline any award of attorney's fees. We state our intent to make a full award of such sums in future PACA cases if the circumstances of such cases make such awards appropriate.

Settle order on notice.