**HILLER CRANBERRY PRODUCTS, INC., Plaintiff,**

v.

**Edward M. KOPLOVSKY, Koplovsky Foods, Inc. and Clermont, Inc., Defendants.**

**Clermont, Inc., Reach and Apply Defendant.**

**First Trade Union Savings Bank and Jefferies & Co., Trustees.**

**No. Civ.A. 98–10431–EFH.**

United States District Court, D. Massachusetts.

June 29, 2000.

Evan Slavitt, Andrew A. Honegger, Gadsby & Hannah LLP, Boston, MA, for Hiller Cranberry Products, Inc., for plaintiff.

Paul G. Lannon, Jr., Holland & Knight LLP, Boston, MA, John J. Monaghan, Gordon P. Katz, Holland & Knight, LLP, Boston, MA, for Koplovsky Foods Inc., Edward M. Koplovsky, and Clermont Inc., defendants.

Joseph F. Ryan, Elise Busny, Brown, Rudnick, Boston, MA, for Congress Financial Corp. (Northwest), intervenor-defendant.

Judith K. Otamura–Kester, Associate General Counsel, Los Angeles, CA, for Jefferies & Co., trustee.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

On March 11, 1998, Plaintiff Hiller Cranberry Products, Inc., filed this action against Defendants Edward M. Koplovsky ("Koplovsky"), Koplovsky Foods, Inc. ("KFI"), and Clermont, Inc. ("Clermont"), alleging claims under state-law breach of contract, state-law misrepresentation, and the federal Perishable Agriculture Commodities Act, 7 U.S.C. § 499a, *et seq.*

("PACA"). Plaintiff now brings this Motion for Partial Summary Judgment on Count V, alleging that Defendant Koplovsky has breached the statutory fiduciary duty established by PACA.

## I. *Factual Background*

Plaintiff is in the business of growing and selling cranberries. Defendant KFI is in the business of purchasing fruit from growers to be sold to processors. On September 10, 1997, plaintiff entered into a supply agreement ("Supply Agreement") with KFI, owned by Koplovsky. Under the terms of the Supply Agreement, plaintiff was to sell 33 percent of its cranberry crop to KFI from 1996 to 1998. Between September 25 and November 25, 1997, plaintiff delivered over $6 million in cranberries to Defendant KFI. Defendant KFI, however, failed to pay over $4.2 million of the agreed purchase price. Plaintiff made a demand from Defendant KFI for the immediate payment of the outstanding balance on or about December 1, 1997. On December 5, 1997, plaintiff filed a "Notice of Intent to Preserve Trust Benefits" with the United States Department of Agriculture, and notified Defendant KFI of such filing. Plaintiff, yet to receive payment, filed this action on March 11, 1998.

## II. *Congress Settlement Agreement*

■ As an initial matter, this Court must decide whether the plaintiff is prevented from bringing this action against Defendant Koplovsky because of a collateral settlement agreement entered into by the plaintiff and Congress Financial Corporation ("Congress"). Plaintiff filed a similar lawsuit against Congress as PACA trustee and creditor of Defendants Koplovsky, KFI, and Clermont. On December 31, 1998, however, the plaintiff entered into a settlement agreement with Congress.[1] One of the terms of the settlement agreement was that, "[t]he Hiller Parties shall not, whether directly or indirectly, file, initiate, prosecute or maintain against Clermont or KFI any claim, suit, action or proceeding of any kind based, in whole or in part, on the sale by any of the Hiller Parties of cranberries to Clermont, KFI, or Koplovsky. . . ." The clear language of the settlement agreement is that plaintiff would not file suit against *Clermont or KFI*. The parties did not agree that plaintiff would abstain from bringing suit against *Koplovsky*. This interpretation is bolstered by the fact that Koplovsky is specifically referred to in the very next sentence. Had the parties so intended, they would have included Koplovsky in the first sentence as well as the second. As such, it is evidence that plaintiff and Congress did not intend that Koplovsky, individually, would benefit from the settlement agreement. Plaintiff is not precluded by the settlement agreement from bringing suit against Koplovsky, individually.

## III. *Summary Judgment Standard*

Summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, based on the pleadings, depositions, interrogatories, admissions, and affidavits, if any. *See* Fed.R.Civ.P. 56(c). A genuine dispute as to material fact exists if a reasonable juror could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, this Court must view all evidence and related inferences in the light most favorable to the non-moving party. *See Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). In this case, once plaintiff has used the pleadings, discovery, and affidavits to demonstrate that there is no genuine dispute of material fact, Defendant Koplovsky must show

---

**1.** The settlement agreement provided that Congress would sell plaintiff property located in New York worth $450,000 as valued by Congress. Plaintiff paid Congress $80,000 for this property. Plaintiff, therefore, received a settlement value of $370,000.

through specific facts and evidence beyond mere allegations that a trial worthy issue remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997). If the defendant fails to do so, summary judgment must issue on Count V.

## IV. *PACA*

■ Congress enacted PACA in 1930 "to promote fair trading practices in the marketing of perishable agricultural commodities, largely fruits and vegetables." *See In re Magic Restaurants, Inc.*, 205 F.3d 108, 110 (3rd Cir.2000). In 1984, Congress amended PACA because "a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which ... merchants ... have not made payment for perishable agricultural commodities purchased ... and that such arrangements are contrary to the public interest." 7 U.S.C. § 499e(c)(1). Thus, PACA was amended to insure that produce growers are paid for the produce they sell. In order to achieve this goal, PACA imposes a statutory trust over any goods, receivables, or proceeds from perishable agricultural commodities until the buyer makes full payment. 7 U.S.C. § 499e(c)(2); *see also Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 5 (1st Cir.1999). An unpaid seller perfects his interest in the trust by filing a timely notice of his claim with the Secretary and with the debtor-broker. 7 U.S.C. § 499e(c)(3).

## V. *Discussion: PACA Liability*

■ The United States Court of Appeals for the First Circuit held that the plaintiff complied with PACA requirements as to 75 percent of the total contract.[2] *See Koplovsky*, 165 F.3d at 8. In so

ruling, the First Circuit recognized that "PACA is a remedial statute that should be given a liberal construction in favor of promoting Congress' intended purpose." *See id.* at 6. The First Circuit noted that a PACA trust "arises from the moment perishable goods are delivered by the seller," *See id.* at 8. Of significant consequence to this action, the First Circuit stated that, "an individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act." *See id.* at 8–9.

■ A PACA trust "imposes liability on a trustee, whether a corporation or a controlling person of that corporation, *who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of the perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities.*" *See id.* at 9. (emphasis added). In other words, a PACA trust gives a PACA beneficiary to the perishable sale proceeds *priority over all other expenditures and creditors. See id.*

Having ruled that a PACA trust exists as to 75 percent of the contract amount, the First Circuit remanded this case to this Court for the purpose of determining whether Defendant Koplovsky is personally liable as a PACA trustee. The primary question before this Court for purposes of this motion, therefore, is whether Koplovsky was "in a position to control the trust assets and [did] not preserve them for the beneficiaries." *See Koplovsky*, 165 F.3d at 9.

■ It is clear to this Court that Defendant Koplovsky was in a position to control KFI, the trust assets, and proceeds. It is

2. The Supply Agreement allowed for 25 percent of the purchase price to be paid more than thirty (30) days after acceptance of the cranberries. Generally, any agreement extending the payment period beyond thirty (30) days constitutes a waiver of rights under

PACA. *See Koplovsky*, 165 F.3d at 5. The United States Court of Appeals for the First Circuit held, therefore, that a PACA trust exists as to only 75 percent of the contract amount. *See id.* at 8.

uncontested that Defendant Koplovsky is the president of KFI. In the deposition of Defendant Koplovsky, he admits that he is the sole person in charge of operations, finances, sales, purchasing, and all other business transactions for KFI. (Koplovsky Dep. at 275–76). Defendant Koplovsky does not dispute in his papers that he was in a position to control KFI, the trust assets, and proceeds. During oral argument before this Court, it was not disputed that Defendant Koplovsky was, at all times, in a position to control KFI, the trust assets, and proceeds.

■ It is undisputed, therefore, that Defendant Koplovsky was in a position to control the trust assets and proceeds as a PACA trustee. It is also undisputed that Defendant Koplovsky did not preserve the trust assets and proceeds for the beneficiary, in this case, the plaintiff. As noted above, PACA imposes liability on a trustee *who uses the trust assets for any purpose other than repayment of the supplier. See Koplovsky,* 165 F.3d at 9. Trust assets may be used *only* to repay the supplier; the PACA beneficiary has priority over even legitimate business expenses. *See id.* This Court need not conduct an extensive inquiry regarding "where the money went." The simple fact is that trust assets and proceeds *were not used to repay the*

*plaintiff.* The law is clear: a trustee who fails to preserve the trust assets and proceeds for the beneficiary has breached a fiduciary duty, and is personally liable. *See id.*

Defendant Koplovsky, therefore, is personally liable to the plaintiff for the PACA trust assets and proceeds as a PACA trustee.

## VI. *Discussion: Damages*

The Supply Agreement provided that payment would be made to the plaintiff within ten (10) days of the invoice date for a given shipment. Furthermore, PACA requires that timely written notice of intent to preserve benefits under the trust be given to the debtor. 7 C.F.R. § 46.47(f). Such notice must be given within thirty (30) days after the agreed time for payment. 7 C.F.R. § 46.47(f)(2)(ii). The plaintiff filed its "Notice of Intent to Preserve Trust Benefits" on December 5, 1997. The PACA trust, therefore, encompasses the amount due for commodities invoiced during this forty (40) day period from October 26, 1997 to December 5, 1997.[3] This amount is $1,223,-176.17. Seventy-five percent (75 percent) of this amount is $917,382.13.[4] Finally, given the remedial nature of PACA, an award of prejudgment interest and attor-

---

3. Consistent with the First Circuit decision establishing the existence of a PACA trust, the date of receipt and acceptance of the commodities is the same as the date of invoice. 7 C.F.R. § 46.46(e).

4. Defendant Koplovsky argues that any amount due should be offset by a $900,000 payment made by Defendant KFI to plaintiff on November 5, 1997. This argument, however, fails to recognize that over $4.2 million is currently owed to the plaintiff. As of October 26, 1997, Defendant KFI's outstanding *debt to the plaintiff was approximately $3.9* million. At the time of the November 5, 1997 payment, Defendant KFI's outstanding debt to the plaintiff was approximately $4.8 million. The $900,000 payment made on November 5, 1997, therefore, was not made in satisfaction of invoices received between October 26, 1997 and December 5, 1997.

Defendant Koplovsky further argues that any amount due should be offset by the $370,000 settlement value received by plaintiff in the settlement with Congress. This argument, however, fails to recognize that only one of plaintiff's many claims against Congress was based on PACA. This fact, combined with the fact that the plaintiff is still owed approximately $4.2 million, militates against offsetting the amount of this Court's judgment by the $370,000 settlement with Congress.

Finally, Defendant Koplovsky has alluded to the fact that the value of the Congress settlement is actually higher than the amount stated by Congress in the settlement agreement. Defendant Koplovsky, however, has failed to provide any evidence of this allegation beyond mere suspicion. In the event that Defendant Koplovsky obtains such evidence, this Court would entertain a motion pursuant to Rule 60(b)(5).

neys fees is appropriate in these cases. *See, e.g., Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346, 351 (S.D.N.Y.1993). Thirty-two months of interest at the federal interest rate of 6.287 percent is \$153,802.17.

## VII. *Conclusion*

Summary Judgment is granted for the plaintiff as to Count V in the amount of \$1,071,184.30 plus reasonable attorneys fees.

SO ORDERED.