**In re Steve A. OZCELIK, Debtor.**

**No. 99–46535.**

United States Bankruptcy Court,
D. Massachusetts.

July 5, 2001.

---

Peter M. Stern, Springfield, MA, for Debtor.

Denise M. Pappalardo, Worcester, MA, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the debtor's "Motion to Approve Pre–Confirmation First Amended Chapter 13 Plan" (the "Motion to Amend"), to which William Dubinsky & Sons, Inc. ("Dubinsky" [1]), a creditor, has objected. Also before the Court is Dubinsky's "Motion for Approval of Super Priority Claim" (the "Motion for Superpriority Claim"). The issue is the same. Dubinsky was an unpaid seller of produce to Equinox Gourmet Foods, Inc. ("Equinox"), a company owned in part and operated by Steve A. Ozcelik (the "Debtor"). The Debtor guaranteed the payment of Equinox's obligations to Dubinsky. Dubinsky now requests superpriority treatment of its claim in the Debtor's Chapter 13 case under the provisions of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, et seq.

---

1. Dubinsky is also known as WM. Dubinsky & Sons, Inc., dba Dubinsky, Musto & Parmelee.

## I. *FACTS:*

The facts in this case are not in dispute and are straightforward. The parties stipulate, inter alia, that:

1. The Debtor and his wife were the sole officers and shareholders of Equinox, a dealer and/or commission merchant as defined in PACA.[2] The Debtor was responsible for the day to day operations of Equinox.

2. On or about August 24, 1998, the Debtor, as the "fiduciary, agent, officer, [and] shareholder for Equinox," entered into an arrangement to purchase perishable agricultural commodities from Dubinsky.[3] The Debtor personally guaranteed payment to Dubinsky.

3. Between January 4, 1999 and March 1, 1999, the Debtor accepted several shipments. The shipments were accompanied by invoices which recited payment terms of ten (10) days from the acceptance of the produce. The invoices also provided that the perishable goods were delivered subject to the statutory trust authorized by PACA.[4]

4. Dubinsky perfected its interest in the statutory trust by notifying Equinox and the Debtor of its intent to retain the trust claim until receipt of payment in full.[5]

5. Dubinsky did not receive full payment from Equinox or the Debtor. Instead, the Debtor used the sale proceeds of the perishable goods to pay other Equinox expenses and/or indebtedness.

In July of 1999, Dubinsky filed suit in state district court against Equinox and the Debtor. On July 27, 1999, the district court approved an attachment against the Debtor's real estate in the amount of $6,200.00, and a writ of attachment was duly recorded in the Registry of Deeds on July 28, 1999. On August 27, 1999, judgment was entered against the Debtor in the amount of $5,854.40, plus interest and costs.[6]

The instant Chapter 13 case was filed in this Court on October 18, 1999. The Debtor listed Dubinsky's claim on his bankruptcy schedules (Schedule F) as unsecured and nonpriority. The Debtor also filed a Chapter 13 plan, but subsequently filed the instant Motion to Amend in order to respond to a number of deficiencies identified by the Chapter 13 trustee and others. Both the original and the amended plan treat Dubinsky's claim as unsecured and nonpriority. Unsecured nonpriority claims under the amended plan are to be paid 10% over a span of 36 months.[7]

---

2. *See* 7 U.S.C. §§ 499a(b)(5) and (6).

3. The term "perishable agricultural commodity" is defined as "any of the following, whether or not frozen or packed in ice: fresh fruits and fresh vegetables of every kind and character... [.]" 7 U.S.C. § 499a(b)(4).

4. This fact is stipulated by the parties, but subject to further evidentiary verification at trial.

5. See Note 4.

6. The Judgment was only against the Debtor. The parties have not explained why Dubinsky did not obtain judgment against Equinox at the same time.

7. There are two mortgages on the Debtor's residence. The amended plan proposes to pay them in full, but outside of the plan and from a future sale of the Debtor's residence. Originally, Dubinsky argued that the proceeds of any sale would likely be insufficient to pay both the existing mortgages and the Dubinsky judicial lien and that its lien should have priority over the mortgages. At the last hearing before this Court, that argument was abandoned, and Dubinsky claimed only that it was entitled to have its alleged priority claim paid out over the life of the plan.

Dubinsky has filed its Motion for Superpriority Claim and objected to the confirmation of the Debtor's first filed plan and the amended plan all for the same reason. Dubinsky claims that it is entitled to payment before all other creditors in the case pursuant to protections provided by PACA.[8] Dubinsky contends that it perfected its interest in the statutory trust by notifying the Debtor of its intent to preserve the PACA trust benefits and that the Debtor is personally liable for the PACA debt as the controlling person of Equinox. Therefore, Dubinsky claims that it is entitled to a secured superpriority status in the Debtor's case. The Debtor opposes.

After hearings, this Court took the motions under advisement. As ordered, the parties subsequently submitted briefs and a joint stipulation of facts.

## II. ANALYSIS:

The Perishable Agricultural Commodities Act (PACA), by its 1984 amendment, creates a statutory trust for the benefit of unpaid suppliers of produce. The statute provides in pertinent part:

> Perishable agricultural commodities ... and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held ... in trust for the benefit of all unpaid suppliers or sellers of such commodities ... until full payment of the sums owing in connec-

tion with such transactions has been received by such unpaid suppliers, sellers, or agents....

7 U.S.C. § 499e(c)(2).

Under this scheme, a statutory trust is created upon delivery of the commodities to a purchaser. *Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1, 8 (1st Cir.1999); *In re Melon Produce, Inc.*, No. 88–10112, 1994 WL 163172, at *1 (Bankr.D.Mass. March 31,1994). The PACA trust is imposed on the produce itself and receivables and proceeds generated therefrom. *Hiller Cranberry Products, Inc. v. Koplovsky*, 106 F.Supp.2d 146, 149 (D.Mass.2000) (citing to *Koplovsky*, 165 F.3d at 5); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 337 (Bankr. D.Mass.1990).

As a non-segregated "floating trust," the commingling of trust assets with other assets of the buyer is contemplated and permitted. *In re Melon Produce, Inc.*, 1994 WL 163172, at *1; *In re Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr.N.D.Tex.1985). Therefore, the unpaid seller is not required to trace the inventory or its proceeds. *Id.* The burden is on the buyer to determine which assets, if any, are not subject to the trust. *In re Fresh Approach, Inc.*, 51 B.R. at 422.

Upon timely notice of the seller's intent to preserve the trust benefits,[9] all produce-related assets are held in trust for the benefit of the unpaid seller until full

---

8. The Debtor has not sought to avoid Dubinsky's lien under 11 U.S.C. § 547(b) (although already characterizing Dubinsky's claim in this case as unsecured). However, if Dubinsky is correct that its claim would enjoy priority over all other claims in the case, any attempt to avoid its lien as a voidable preference would likely fail. *See* 11 U.S.C. §§ 547(b)(5) and 547(c)(6).

9. The statute provides that in order to preserve the benefits under the PACA trust, the produce seller must give written notice of such intent to the Debtor. 7 U.S.C. § 499e(c)(3). Dubinsky asserts that it perfected its interest in the statutory trust by providing proper notice to Equinox in the invoice statements pursuant to 7 U.S.C. § 499e(c)(4). As set forth above, that assertion is not disputed at this time.

payment has been received. *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 486 (2nd Cir.2001); *Koplovsky*, 165 F.3d at 9; *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir.1997). In the event of bankruptcy, such trust funds are not property of the bankruptcy estate and are not available to non-PACA' creditors.[10] *Koplovsky*, 165 F.3d at 5; *In re Melon Produce, Inc.*, 1994 WL 163172, at *1. *See also* 11 U.S.C. § 541(d) ("Property in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.").[11]

▪▪▪ In addition to the liability of the corporate buyer, several courts, including the First Circuit, have held that an individual who is in a position to control the PACA trust assets, but does not preserve them for the beneficiaries, has breached a fiduciary duty and is personally liable for that tortious act.[12] *See, e.g., Golman–Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir.2000); *Koplovsky*, 165 F.3d at 8–9; *Sunkist Growers, Inc.*, 104 F.3d at 283; *Shepard v. K.B. Fruit & Vegetable, Inc.*, 868 F.Supp. 703, 706 (E.D.Pa.1994); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346, 348 (S.D.N.Y.1993). As explained in *Shepard*, 868 F.Supp. at 706, PACA liability attaches first to the corporation that has sold produce without remitting the proceeds due to the beneficiary. If, however, corporate assets are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had a role in causing the corporate trustee to commit the breach of trust.[13] Personal liability under PACA requires only that trust assets be used for some purpose other than repayment to the seller. *Koplovsky*, 106 F.Supp.2d at 150; *Morris Okun, Inc.*, 814 F.Supp. at 348 (cited in *Koplovsky*, 165 F.3d at 9). "This includes use of the pro-

10. Even though PACA trust assets do not become part of the buyer's bankruptcy estate, PACA trusts remain subject to the control of bankruptcy courts. *See Bank of Los Angeles v. Official PACA Creditors' Comm. (In re Southland + Keystone)*, 132 B.R. 632, 642–643 (9th Cir. BAP 1991) (bankruptcy trustees may collect and divide PACA trust funds among beneficiaries); *Allied Grocers Co-Operative, Inc. v. United Fruit and Produce Co. (In re United Fruit & Produce Co.)*, 86 B.R. 14, 16 (Bankr. D.Conn.1988) (same).

11. A PACA trustee or buyer holds legal title to PACA trust assets, but the seller retains an equitable interest in the trust assets pending full payment. *C.H. Robinson Co. v. Alanco Corp.*, 239 F.3d 483, 487 (2nd Cir.2001); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 337 (Bankr.D.Mass.1990).

12. Courts have also held that PACA debts can be excepted from bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(4). *See, e.g., N.P. Deoudes, Inc. v. Snyder (In re Snyder)*, 184 B.R. 473, 475 (D.Md.1995); *Nuchief Sales, Inc. v. Harper (In re Harper)*, 150 B.R. 416 (Bankr.E.D.Tenn.1993); *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993); *Collins Bros. Corp. v. Nix (In re Nix)*, No. 91–4040, 1992 WL 119143, at *6 (M.D.Ga. April 10, 1992); *Tom Lange Co. v. Stout (In re Stout)*, 123 B.R. 412, 415 (Bankr.W.D.Okla.1990). However, dischargeability of debt is not an issue here as the dispute relates to the distribution of assets, not the post bankruptcy survival of the claim. And, in any event, § 523(a)(4) nondischargeability issues are irrelevant in a Chapter 13 case. *See* 11 U.S.C. § 1328(a).

13. *But see Farm–Way Produce, Inc. v. Wayne L. Bowman Co.*, 973 F.Supp. 778, 783 (E.D.Tenn.1997) (The legislative history of PACA does not indicate a Congressional intent to abrogate state corporate and contract law and apply a strict liability theory under PACA. In fact, "Congress plainly intended that PACA place sellers of perishable commodities ahead of the banks in priority to collect in the case of insolvency. Nowhere in the legislative history is the issue of individual liability of persons under PACA discussed.").

ceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities." *Id.*

According to Dubinsky, the Debtor dissipated the proceeds from the sale of the perishable goods by using the proceeds to pay other business expenses. As the controlling officer and a shareholder of Equinox, the Debtor does not dispute Dubinsky's contention that he is secondarily liable for failing to preserve the trust assets.[14] What is disputed, however, is Dubinsky's assertion that it is entitled to a superpriority claim in the Debtor's Chapter 13 proceeding.

■■■ The First Circuit is also among the several courts who agree that, in the bankruptcy case of the produce buyer, a PACA beneficiary has a priority interest in the PACA trust assets ahead of all other creditors. *Koplovsky,* 165 F.3d at 9. *See also, e.g., C.H. Robinson Co.,* 239 F.3d at 488; *Magic Restaurants, Inc. v. Bowie Produce Co. (In re Magic Restaurants, Inc.),* 205 F.3d 108, 112 (3rd Cir.2000); *Sysco Food Services of Seattle, Inc. v. Country Harvest Buffet Restaurants, Inc. (In re Country Harvest Buffet Restaurants, Inc.),* 245 B.R. 650, 653 (9th Cir. BAP 2000); *Golman–Hayden Co.,* 217 F.3d at 350; *Morris Okun, Inc.,* 814 F.Supp. at 348; *Sanzone–Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1013 (6th Cir.1993); *In re John De-Francesco & Sons, Inc.,* 114 B.R. at 337; *In re Fresh Approach, Inc.,* 51 B.R. at 420. Of course, while such priority applies to all of a buyer's produce-related assets, it does not apply to other non-trust assets. *See*

*Strube Celery & Vegetable Co. v. Zois (In re Zois),* 201 B.R. 501, 509 (Bankr.N.D.Ill. 1996) (the PACA trust applies to the perishable goods, receivables, and sale proceeds thereof, but it does not extend to other assets); *Goldman Fruit & Produce Co. v. Lombardo Fruit & Produce Co. (In re Lombardo Fruit & Produce Co.),* 12 F.3d 110, 112 (8th Cir.1993) ("The protection extends only to 'any receivables or proceeds from the sale of such commodities and food or products,' ... and proceeds from other sources are not within the trust's rubric."); *In re Melon Produce, Inc.,* 1994 WL 163172, at \*2 (PACA claimant is not entitled to priority status when the proceeds in question are not assets derived from the debtor's produce accounts receivable or the proceeds therefrom).

Dubinsky goes further, and argues that PACA entitles produce sellers to a priority claim in the bankruptcy cases of those secondarily liable under PACA. But Dubinsky's claim against the Debtor is not premised on a purported transfer of PACA proceeds from Equinox to the Debtor. Accordingly, it is not grounded on the existence of trust proceeds in the possession of the Debtor. Rather, Dubinsky's claim against the Debtor is grounded solely on the Debtor's liability as a trustee of those proceeds.[15] This Court is not aware of any case law that supports priority treatment for a PACA creditor in the bankruptcy case of a debtor simply because the Debtor is secondarily liable under PACA.

Dubinsky seeks support for its contentions from the case of *In re Fresh Ap-*

---

14. Dubinsky argues that even if the Debtor is not liable as the controlling person of Equinox, the Debtor is liable by personally guaranteeing the PACA debt.

15. *See* Joint Stipulation of Facts, ¶ 12:

The Debtor, *as the fiduciary, agent, officer and shareholder for Equinox Gourmet Food,* dissipated the proceeds from the sale of the perishable agricultural commodities by using said proceeds to pay other expenses and/or indebtedness. (Emphasis added.)

*proach, Inc.,* supra. There, the court noted that "Congress intended to create a priority status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." 51 B.R. at 420. This Court agrees, but that view was expressed in the case of a produce buyer who sought to retain the use of trust assets pending approval of its plan of reorganization. The court in *In re Fresh Approach, Inc.* did not address the issue before this Court.

■ Finally, Dubinsky reminds the Court that, as a remedial statute, PACA should be construed liberally in favor of promoting Congress' intended purpose. *Collins Bros. Corp. v. Nix (In re Nix),* No. 91–4040, 1992 WL 119143 (M.D. Ga. April 10, 1992); *Koplovsky,* 165 F.3d at 6. Dubinsky cites to § 499e(c)(1) of the Act, which notes in pertinent part:

> ... financing arrangements under which commission merchants, dealers, or brokers ... encumber or give lenders a security interest in [perishable commodities or proceeds therefrom] are contrary to the public interest. This [Act] is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

Nevertheless, the intended purpose of Congress in enacting the PACA's trust provision was to provide unpaid produce sellers with greater protection from the risk of default by buyers, *C.H. Robinson Co.,* 239 F.3d at 488, by placing them ahead of other creditors in priority to collect from the PACA trust. There is no indication that Congress intended to go further by providing PACA suppliers with a superpriority claim in the bankruptcy cases of a debtor secondarily liable, in the absence of any evidence that the debtor obtained possession of the trust assets or proceeds in his or her individual capacity.

### III. *CONCLUSION:*

Neither the Bankruptcy Code nor PACA provides for superpriority treatment of Dubinsky's claim in this case. Accordingly, Dubinsky's Motion for Superpriority Claim is DENIED and the objection to the Debtor's Motion to Amend is OVERRULED.

Separate orders shall be entered in conformity with this Memorandum of Decision.